JOHN P. HORNISH, Appellee, v. LILLIAN McCONNELL et al., Appellants.

**ATTORNEY AND CLIENT:** Contract for Employment—Proof. Evidence held to afford ample proof of the employment of an attorney to collect a note against a resident of a foreign state, of the employment by such attorney of associate counsel, of the securing of security for such payment on a contingent basis, and of the client's acquiescence therein.

**APPEAL AND ERROR:** Reservation of Grounds—Insufficient Record. A record showing (1) objections to the competency of a witness, with rulings reserved, and (2) objections to incompetent testimony, without any ruling thereon, presents nothing for appellate review.

**APPEAL AND ERROR:** Harmless Error—Judgment Supported Without Incompetent Testimony. The reception, in an equity cause against an administrator, of testimony of an interested party as to

personal transactions with a deceased party, is harmless when, by excluding all such testimony, enough competent testimony remains to amply sustain the judgment of the court.

**ATTORNEY AND CLIENT: Equity (?) or Probate (?) to Enforce Claim.** An attorney whose sole security for the payment of his services is a financial obligation belonging to the client, and left in his possession for the purpose of making such security effective, is under no obligation to file his claim in probate against the estate of the deceased client, but may proceed in equity against the rival claimants to the obligation, and have his claim adjudicated.

*Appeal from Lee District Court.*—W. S. HAMILTON, Judge.

APRIL 6, 1921.

ACTION to recover upon contract for services rendered by the plaintiff. The facts are sufficiently stated in the opinion. There was a judgment for the plaintiff, and defendants appeal.— *Affirmed.*

*William C. Howell,* for appellants.

*John P. Hornish,* for appellee.

WEAVER, J.—In the year 1896, one Mary W. Brown, now deceased, held a promissory note for the sum of $1,921.25 against H. N. Bostwick. The note was past due and unpaid. On the date named, the plaintiff herein was an attorney at law, practicing his profession at Keokuk, Iowa. On May 4, 1896, Mrs. Brown placed the note in the hands of plaintiff for collection, taking his receipt therefor. While the evidence in some respects is meager, it is fairly inferable therefrom that the debtor, Bostwick, was then a resident of Colorado, but was without assets which could be subjected to the payment of the debt. Correspondence was opened between the plaintiff and the firm of Black & Catlin, Colorado attorneys, concerning the collection of the note, and the paper was forwarded to the latter for that purpose, in response to a proposition made by them to collect it, if practicable, three fifths of such collection to belong to Brown, and the other two fifths to be equally divided between Black &

*1. ATTORNEY AND CLIENT: contract for employment: proof.*

Catlin, as a firm, and the plaintiff, for their services. Bost-
wick's life had been insured in the Connecticut Mutual Com-
pany for the sum of $7,000, payable to H. Shirley Bostwick
and Eudora A. Badger. On November 23, 1896, Black & Catlin
obtained the written agreement of Bostwick and the beneficiaries
of said insurance that Bostwick would keep up the premiums
accruing thereon during the remainder of his life, and that, at
his death, $2,000 of the moneys realized upon said policy should
be paid to Mrs. Brown upon the note above mentioned, and the
unpaid remainder should stand as a charge against the maker's
estate. This agreement was made upon consideration that Mrs.
Brown should not, during Bostwick's life, undertake to enforce
payment of the latter's debt. To effect this purpose, the bene-
ficiaries of the policy delivered to Black & Catlin an assignment
thereof, to the extent of $2,000. This agreement and assignment
were put in evidence on the trial, and it bears upon its face
Brown's written acceptance of its terms. Bostwick died January
15, 1919, and shortly thereafter, Black & Catlin assigned their
claims under said contracts to the plaintiff, Hornish. Mary W.
Brown died testate in 1905, and the defendant herein, Lillian
McConnell, is the executrix of her will and trustee of her estate.
The insurance company has paid the amount of the Bostwick
policy into court, to be paid over to the party or parties to whom
the court shall find that it properly belongs. The trial court
found and adjudged that plaintiff was entitled to receive from
said insurance fund the sum of $800.

Appellant, in argument, insists that the judgment below is
wholly without support in the evidence. In this view of the
record we cannot concur. It appears without substantial dis-
pute that Mary Brown employed plaintiff as her attorney to
collect the Bostwick note. To say nothing of other testimony
to this fact, the defendant, as executrix or trustee of the Brown
estate, produced on the trial the receipt given by plaintiff in
evidence of that transaction, and, in her inventory of the estate,
the executrix describes the note as being in the plaintiff's hands,
and secured to the extent of $2,000 by assignment of insurance
policy. That the plaintiff associated with him in making such
collection the Colorado attorneys, Black & Catlin, is also clearly
and indisputably shown; and, pursuant to such association,

Black & Catlin obtained an assignment of the Bostwick life insurance policy, to secure the payment therefrom of the sum of $2,000 upon the note at Bostwick's death. That this agreement or assignment was authorized or ratified by Mary Brown is shown by her written consent, indorsed thereon, as well as by her subsequent conduct in leaving the papers in the hands of her said attorneys until Bostwick's death, more than 20 years later.

There is no suggestion or pretense on appellant's part that, as a matter of fact, plaintiff was not employed by Brown to collect this note, or that Black & Catlin were not associated with him in attending to that business, or that the security for the payment of the note to the extent of $2,000 was not obtained by their effort, or that such security has not been realized upon to that full amount in the deposit now in the hands of the court for distribution to the party or parties to whom it justly and equitably belongs. There is no pretense that these services have ever been paid for or in any manner compensated. By assignment to him of Black & Catlin's claim, plaintiff is entitled to payment for all the services of counsel in that behalf, and it would ill become a court of law or equity to hold that he is remediless.

But it is insisted that there is no competent evidence that Mary Brown ever consented to payment of a collection fee of two fifths of the sum recovered, and there is no claim or proof on the theory of a *quantum meruit*. It is shown that, in the preliminary correspondence which resulted in the employment of the services of Black & Catlin, they wrote to plaintiff, on April 27, 1896, that they would be willing to take hold of the matter "on this basis: the owner of the note to get three fifths of whatever is realized, you one fifth, we one fifth;" and that, in response to this proposition, the note was forwarded to them. It is true that no witness testifies to the express knowledge by Brown of this understanding, or to her express consent thereto. It does sufficiently appear that she knew that Bostwick lived in a distant state, and must have known that plaintiff was acting in conjunction with counsel in that jurisdiction in bringing about the arrangement which she approved, for taking an assignment as security to the extent of $2,000, and postponing

the enforcement of the obligation until Bostwick's death. There is not the slightest reason indicated for a suspicion that, in approving and accepting this plan of settlement, Brown was deceived or misled by her counsel, or that they withheld or suppressed any of the facts connected with it. In the absence of any charge or proof of fraud, the presumption of good faith must obtain. Knowing, as she must have known, that plaintiff, as her local representative, must, or at least might, properly enlist the services of other counsel in Colorado, she impliedly authorized him to employ such assistance on such reasonable terms as he found necessary to accomplish the end for which she engaged his services. That she did know that plaintiff employed Black & Catlin for this purpose cannot be doubted; and, if there be any reason why she did not become bound by the terms of such employment, it does not appear in the record. If she were now living, and defending against this claim, it would be incumbent on her, upon the showing here made, to plead and prove affirmatively some fact or facts relieving her from the obligation so entered into in her behalf; and the executrix or trustee of her estate cannot assert any defense which would not have been available to her, were she living and in court.

There is, however, testimony of a direct character tending to show that she did know of the terms of the agreement with Black & Catlin. This testimony is challenged by the defendant because of the alleged incompetency of the witness; and that the situation may be made clear, we turn to the record as it appears in the abstract. Plaintiff, being duly sworn as a witness, was asked: "Q. State whether you ever saw her [Brown] in your office on or about May, 1896." To this inquiry defendant objected that the witness was incompetent, under the statute, to testify to any transaction or communication between himself and the deceased. Upon this objection, the court reserved its ruling, and the witness answered, "Yes." Then followed: "Q. At that time, state whether you saw any papers in her possession, and if so, what they were." Same objection as last, and same ruling and exception. The witness answered:

"I saw in her possession letter of April 27, 1896, written by Black & Catlin to John P. Hornish. I also saw in her possession

*2. APPEAL AND ERROR: reservation of grounds: insufficient record.*

letter written by John P. Hornish to Black & Catlin. She held the same, as if reading both letters.''

Thereupon, defendant moved to strike the answer, because the witness is incompetent to testify to a personal transaction between himself and the deceased. This motion does not appear to have been ruled upon, nor does it appear that the rulings ''reserved'' by the court were, in fact, called for or entered of record. Whatever may be thought of the competency of the plaintiff as a witness, the record in this respect discloses no ground for a reversal of the judgment appealed from. In the first place, it is doubtful if there is shown any ruling to which exception can be taken on appeal. The court reserved its ruling, at the time objection was made, and was not thereafter requested to rule. Moreover, even if there was error in this respect, the action having been brought and tried as being in equity, the judgment may still stand if, without such evidence, it has sufficient support in the record; and that such is the case we are fully satisfied.

3. APPEAL AND ERROR: harmless error: judgment supported without incompetent testimony.

In his petition, plaintiff, having alleged the facts on which he relies for a recovery, asserts that, by reason thereof, he acquired an interest in or lien upon the Bostwick insurance to the extent of two fifths of the sum of $2,000, which he asks the court to establish and confirm. Appellant argues that plaintiff, not having stated facts showing him entitled to a statutory attorney's lien, is not entitled to a lien of any kind; and that his only remedy, if any, is to file his demand with the defendant as an ordinary claim against the Brown estate, and pursue the usual course for the establishment of claims in probate. This objection relates to matters and methods of procedure, rather than to the merits of the case. It appears, however, that Brown died in 1905, and it is to be presumed that her estate had been fully administered before the death of Bostwick, and it was not until the latter event that plaintiff acquired a right to demand payment; and indeed, not until then could it be known that he would ever be entitled to make such demand. His right to compensation was limited to a fractional part of the insurance, if the same was finally realized; but if the insurance had

4. ATTORNEY AND CLIENT: equity (?) or probate (?) to enforce claim.

been forfeited or lost, the Brown estate owed him nothing. His sole reliance was upon the interest he had acquired in the security obtained. He had no enforcible claim against the Brown estate, as such. We think it immaterial to consider whether, upon the facts shown, the plaintiff became technically the owner of a fractional interest in the policy. Indeed, it may be conceded that he did not; but, when he procured the assignment of the insurance policy to the extent of $2,000 for the benefit of Brown, out of which fund he and his associates were to receive a two-fifths part as their compensation, and when the note so secured and the policy so assigned were left in his hands, to await the maturity and collection of the insurance, he did acquire possession, coupled with an equitable interest in said note and security to the extent necessary to enforce collection of his claim. Having rightful possession of the note and of the policy securing it, he was under no obligation to surrender them to the executrix or trustee, except upon payment of his just compensation; and, when he brought defendant and the insurance company into court to have their several rights, obligations, and equities determined and adjusted, and the money was paid into court, an objection that he should have presented his demand as a claim in the probate of the Brown estate is without merit.

Defendant also sets up the claim that, before beginning this action, plaintiff had instituted vexatious suits in the state of Colorado against the defendant and the insurance company, upon the cause or causes of action, and that by this conduct he is estopped to maintain the present action. We find no element of estoppel in this plea, and the trial court did not err in so holding.

The decree entered below establishes the plaintiff's right to receive the sum of $800 from the insurance moneys paid into court, and provides that, after paying said sum and the costs of the case, the remainder be turned over to the defendant. If the action may be treated as at law, there is no error in the record to the appellant's prejudice; or, if the issues be regarded as invoking the equitable powers of the court, there is nothing in the rulings on the trial or in the terms of the decree entered of which the appellant can reasonably complain.—*Affirmed.*

EVANS, C. J., PRESTON and DE GRAFF, JJ., concur.